903 So.2d 902 (2005)
Inquiry Concerning a Judge, re Ana Marie PANDO.
No. SC04-1636.
Supreme Court of Florida.
May 12, 2005.
Richard C. McFarlain, Chairman, Tallahassee, FL; Thomas C. MacDonald, Jr., General Counsel, Tampa, FL; Brooke S. Kennerly, Executive Director, Tallahassee, FL; Marvin E. Barkin, John E. Johnson, and Amy L. Drushal of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill and Mullis, P.A., Tampa, FL, for Florida Judicial Qualifications Commission, Petitioner.
Jose M. Herrera, Coral Gables, FL, for Judge Ana Marie Pando.
PER CURIAM.
We review the recommendation of the Judicial Qualifications Commission ("JQC") that Judge Ana Marie Pando receive the sanction of public reprimand and a $25,000 fine for her judicial misconduct.[1] We approve the JQC's recommendation.
The JQC filed charges against Judge Pando, alleging that during the course of her unsuccessful 1998 election campaign and her successful 2000 election campaign Judge Pando (1) accepted loans from family members in excess of the $500 statutory limit; (2) misrepresented the source of these loans in submitting and certifying her campaign finance reports during the course of the campaigns; and (3) made misleading statements regarding the source of a $25,000 loan in her deposition by special counsel for the JQC. On August 23, 2004, the JQC filed a notice of formal proceedings against Judge Pando charging her with violating chapter 106, Florida Statutes (1997 & Supp.1998), and chapter 106, Florida Statutes (2000), and canons 1, 2, and 7 of the Code of Judicial Conduct. The JQC's notice of formal charges set forth in pertinent part the following:
1. In violation of Chapter 106 of the Florida Statutes and Canon 7 of the Code of Judicial Conduct, during the 1998 campaign, you knowingly and recklessly accepted a $25,000 personal loan from a family member (your mother) made for the purpose of influencing the results of an election in excess of the $500 limit on contributions proscribed by law. Further, you misrepresented the source of this loan in an attempt to avoid the $500 contribution limit.
2. In violation of Chapter 106 of the Florida Statutes and Canon 7 of the Code of Judicial Conduct, during or after each campaign, you knowingly and recklessly violated the reporting provisions of Chapter 106, Florida Statutes, by certifying the correctness of the campaign loan reports for each campaign year, when you knew that such reports were incorrect, false, or incomplete because they failed to disclose that Millie Bencomo (your mother), Esteban Bencomo (your stepfather), and/or their respective businesses were a source of numerous loans in excess of the $500 limit.
3. In violation of Chapter 106 of the Florida Statutes and Canon 7 of the *903 Code of Judicial Conduct, during the campaigns, you misrepresented the source of certain of your contributions in your campaign finance reports.
4. In violation of Chapter 106 of the Florida Statutes and Canons 1, 2, and 7 of the Code of Judicial Conduct, during the course of your deposition on July 2, 2003, you made statements tending to mislead the Commission as to a purported loan that you received from Eastern National Bank.
These acts, if they occurred as alleged, would impair the confidence of the citizens of this state in the integrity of the judicial system and in you as a judge; would constitute a violation of the cited Canons of the Code of Judicial Conduct; would constitute conduct unbecoming a member of the judiciary; would demonstrate your unfitness to hold the office of judge; and would warrant discipline, including, but not limited to, your removal from office and/or any lawyer discipline that the Commission recommends.
The JQC and Judge Pando presented a stipulation to this Court pursuant to article V, section 12, Florida Constitution, and Florida Judicial Qualifications Commission Rule 6(j). In that stipulation, Judge Pando admitted the following conduct and the impropriety of that conduct:
a. During the 1998 campaign, in violation of Chapter 106 of the Florida Statutes and Canon 7 of the Code of Judicial Conduct, she knowingly or recklessly accepted a $25,000 personal loan from a family member (her mother) made for the purpose of influencing the results of an election in excess of the $500 limit on contributions proscribed by law. Further, she misrepresented the source of this loan in an attempt to avoid the $500 contribution limit.
b. In violation of Chapter 106 of the Florida Statutes and Canon 7 of the Code of Judicial Conduct, during or after each campaign, she knowingly or recklessly violated the reporting provisions of Chapter 106, Florida Statutes, by certifying the correctness of the campaign loan reports for each campaign year, when she knew that such reports were incorrect, false, or incomplete because they failed to disclose that Millie Bencomo (her mother), Esteban Bencomo (her stepfather), and/or their respective businesses were a source of numerous loans in excess of the $500 limit.
c. In violation of Chapter 106 of the Florida Statutes and Canon 7 of the Code of Judicial Conduct, during the campaigns, she inaccurately reported the source of certain of her contributions in her campaign finance reports.
d. In violation of Chapter 106 of the Florida Statutes and Canons 1, 2, and 7 of the Code of Judicial Conduct, during the course of her deposition by special counsel on July 2, 2003, she made statements tending to mislead the JQC as to a purported loan that she received from Eastern National Bank.
The JQC recommended a public reprimand of Judge Pando as well as payment of a $25,000 fine. As explained below, based on the stipulated facts, the JQC's recommendation is approved.
This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved. "While this Court gives the findings and recommendations of the JQC great weight, `the ultimate power and responsibility in making a determination rests with this Court.'" In re Kinsey, 842 So.2d 77, 85 (Fla.) (footnote omitted) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)), cert. denied, 540 U.S. 825, 124 S.Ct. 180, 157 L.Ed.2d 47 (2003). Accordingly, we review *904 the findings to ensure that there is "clear and convincing evidence" to support the alleged ethical violations  a standard of proof which has been described as "more than a `preponderance of the evidence,' but the proof need not be `beyond and to the exclusion of a reasonable doubt.'" Id. (quoting In re Davey, 645 So.2d at 404). A review of the stipulation entered into by Judge Pando and the JQC, as well as the JQC's findings, demonstrates by clear and convincing evidence that Judge Pando's conduct violated chapter 106 of the Florida Statutes and canons 1, 2, and 7 of the Code of Judicial Conduct. Judge Pando admitted the conduct alleged and the impropriety of that conduct in the stipulation presented by the parties.
Having found that the findings of the JQC are supported by clear and convincing evidence, we now address the recommendation of discipline. In an analogous case, In re Rodriguez, 829 So.2d 857 (Fla.2002), this Court accepted the JQC's recommendation of a public reprimand and $40,000 fine for campaign finance conduct violative of the Code of Judicial Conduct. Judge Rodriguez was found to have violated canons 1, 2, 5 D, 6 B, and 7 of the Code of Judicial Conduct, as well as section 106.075, Florida Statutes (1997). In other cases this Court has accepted the JQC's recommendation of a public reprimand for campaign violations. See In re Alley, 699 So.2d 1369, 1370 (Fla.1997) (approving public reprimand for judicial election campaign violations); In re Glickstein, 620 So.2d 1000, 1002-03 (Fla.1993) (approving public reprimand for violation of canons 1, 2, and 7).
We accept the JQC's recommendation of a public reprimand and fine for Judge Pando. Such disciplinary action is consistent with governing precedent with regard to the appropriate sanction for this type of judicial misconduct.
We order that Judge Pando pay a fine of $25,000. We also command Judge Ana Maria Pando to appear before this Court for the administration of a public reprimand at a time to be set by the clerk of this Court. See In re Frank, 753 So.2d 1228, 1242 (Fla.2000).
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs specially with an opinion.
LEWIS, J., specially concurring.
While I recognize the authority of both In re Kinsey, 842 So.2d 77 (Fla.2003), and the decision, in which I did not participate, in In re Rodriguez, 829 So.2d 857 (Fla.2002), I continue to hold the view that if conduct is so egregious as to require enormous monetary fines, the judicial office itself has been soiled and damaged. If we continue down this path, in my view, we undermine trust and confidence in the judicial system. Here, Judge Pando certainly did not engage in the type of conduct condemned in Kinsey; however, I continue to believe as I voiced in Kinsey:
In my view, the imposition of this fine, the amount of which is clearly designed and intended to represent the enormity of the reprehensible behavior, sends the message to future candidates that they may violate the Code and commit ethical breaches, if they are prepared to pay a monetary fine following the election. The kind of promises and type of condemnable campaign behavior demonstrated here tarnishes the very purpose for which the judiciary was established  to fairly and impartially consider any and all matters, without preconceived notions or positions about the merits of each case.... I conclude that *905 if the actions are so reprehensible that the majority believes the imposition of a $50,000 fine is justified, those actions must certainly justify removal from the office so tainted. Selecting an enormous fine as discipline only sends the message that "anything goes" in judicial elections if a candidate has the financial ability to pay the monetary consequences. Indeed, in this era in which many judicial candidates in Florida are able to produce significant campaign funds from donations or personal assets, there may come a day when candidates simply maintain monetary reserves to pay fines following the election and then only the economically powerful can successfully compete in the election process.
Kinsey, 842 So.2d at 99.
NOTES
[1] We have jurisdiction. See art. V, § 12, Fla. Const.