PER CURIAM.
This matter is before the Court for review of the recommendation of the Florida Judicial Qualifications Commission (JQC) that Judge George W. Maxwell, III, be publicly reprimanded. We have jurisdiction. See art. V, § 12, Fla. Const. We approve the JQC’s findings and recommended sanction.

I. FACTS

The JQC formally charged Judge Maxwell with conduct alleged to violate Canons 1 [1], 2A[2], 3B(4)[3], and 3B(7)[4] of the Code of Judicial Conduct. The charges against Judge Maxwell stem from his actions on October 28, 2007.
On the morning of October 28, 2007, the Brevard County Sheriffs Office responded to a battery complaint at a private residence. The officers determined that the wife had committed domestic violence battery against her husband, and she was charged, arrested, and transported to the Brevard County Jail. Later that day, the wife’s brother, Jack Platt, who is an attor *976 ney with whom Judge Maxwell was previously affiliated in private practice and with whom Judge Maxwell appeared on the firm’s letterhead, called Judge Maxwell at his residence and requested his assistance in securing the release of his sister. Even though the matter was not assigned to him, Judge Maxwell thereafter contacted the Brevard County Sheriffs Office and authorized her release to the Pretrial Release Program without the benefit of a first appearance. Judge Maxwell authorized the defendant’s release notwithstanding the fact that she was currently serving a sentence of five years probation for obtaining controlled substances by fraud, thus making her ineligible for the Pretrial Release Program.
In its Notice of Formal Charges, the JQC concluded that Judge Maxwell’s conduct, if it occurred as alleged, violated Canons 1, 2A, 3B(4), and 3B(7). However, the JQC and Judge Maxwell reached an agreement and entered into a stipulation in which Judge Maxwell acknowledged that he violated Canons 1, 2A, and 2B of the Code of Judicial Conduct.[5] According to the stipulation, Judge Maxwell accepted full responsibility for the conduct, admitted that it should not have occurred, expressed his regret and apologies for such conduct, and noted that he had undertaken steps to prevent reoccurrence of the conduct.[6] Judge Maxwell also denied that he intended to violate the applicable Canons, and contended that he acted with a good faith belief that such conduct was appropriate. Because the JQC concluded that the actions were misguided but not ill-intentioned, it recommended a public reprimand.

II. ANALYSIS

In In re Maloney, 916 So.2d 786 (Fla.2005), we explained:
When the JQC presents a case for our review, we are authorized under the Florida Constitution to “accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission” and to “order that the justice or judge be subjected to appropriate discipline.” Art. V, § 12(c)(1), Fla. Const. “This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved.” In re Pando, 903 So.2d 902, 903 (Fla.2005). While *977 the Court gives the JQC’s findings and recommendations great weight, “the ultimate power and responsibility in making a determination rests with this Court.” In re Davey, 645 So.2d 398, 404 (Fla.1994). Thus, “we review the findings to ensure that there is ‘clear and convincing evidence’ to support the alleged ethical violations” and determine whether to approve the recommendation of discipline. In re Andrews, 875 So.2d 441, 442 (Fla.2004) (quoting In re Kinsey, 842 So.2d 77, 85 (Fla.2003)). Additionally, where the findings of the JQC are supported by clear and convincing evidence, the Court gives the findings persuasive force and great weight in considering the JQC’s recommendation of discipline. See In re Holloway, 832 So.2d 716, 726 (Fla.2002) (finding clear and convincing evidence to support finding that judge used the prestige of judicial office to request a scheduling favor for a family member from another judge, but insufficient evidence to support conclusion that judge abused her office based on single telephone call to a detective handling a criminal investigation involving a friend).
In re Maloney, 916 So.2d at 787-88.
In recommending that Judge Maxwell receive a public reprimand, the JQC stated that it was guided by this Court’s decision in In re Maloney. There, Judge Maloney had a close friend whose son was arrested for driving under the influence (“DUI”). Id. at 786. Judge Maloney’s son was a passenger in the car, but was not charged with any violations. Id. Although the law prohibits the immediate release of persons arrested for DUI, Judge Maloney nevertheless contacted the Lakeland Police Department after picking up his own son on the morning in question and demanded the release of his friend’s son. Id. at 786-87. The police department objected, but released the son to the custody of his father based on the judge’s demand. Id. The JQC found that the judge’s actions violated Canons 1, 2A and 2B, but agreed to a public reprimand after the judge admitted the allegations, acknowledged the violations of the Code of Judicial Conduct, and agreed to the stipulated penalty. Id. at 787. On appeal, this Court approved the stipulation because “[a] public reprimand, as disciplinary action, is consistent with governing precedent regarding sanctions for judicial misconduct where a judge uses the prestige of judicial office to obtain favorable treatment for himself or another individual.” Id. at 788. This Court noted that in recommending a public reprimand, the JQC considered various mitigating circumstances, including Judge Maloney’s lack of disciplinary history, reputation as a fair, impartial, and competent jurist, candor before the JQC Investigative Panel, and testimony that he was unaware his conduct constituted a violation of state law. Id. at 788-89.
This case does bear some similarity to In re Maloney. In the instant case, Judge Maxwell contacted the Brevard County Sheriffs Office and sought the release of a former colleague’s sister to the Pretrial Release Program, despite the fact that the law prohibited such a release because she was already on probation for a controlled substance offense. However, we also note that this case could be viewed as more serious than In re Maloney because Judge Maxwell accepted an ex parte communication from an attorney without input from the prosecutor or any other interested party.[7] In addition, he relied on this ex parte communication in ordering the defendant’s release, even though it appears that Judge Maxwell may not have had the complete *978 picture of the exact details of the crime or the defendant’s prior record.[8]
As we have tried to make clear in our opinions on judicial discipline, and as evidenced by the Code of Judicial Conduct, a judge has an absolute obligation to “act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla.Code of Jud. Conduct, Canon 2A. This provision is not an aspirational principle but a clear and unequivocal mandate. At each turn, from the oath of office to the New Judges College to ongoing judicial education, we instill this ultimate responsibility in our judges. Judge Maxwell clearly violated this canon and admitted to so doing. In addition, it is clear and unambiguous that the communication from the attorney was an absolute violation of Canon 3B(7) that prohibits ex parte communications except under certain limited circumstances not present in this case. Moreover, by his stipulation, Judge Maxwell also admitted to this violation.
As one of the long-serving JQC lay members observed in his questioning of Judge Maxwell at the investigative hearing that forms part of this record presented to the Court:
Your actions brought, in my opinion, a major problem to the perception of fairness, a major problem of the person who is on the street who comes before and doesn’t know a judge and can’t have his brother call him up.
Judge Maxwell’s improper conduct of calling the police to secure the defendant’s release was exacerbated by the fact that he was prompted to intervene by a phone call from the defendant’s brother, with whom he previously had practiced law. This special consideration would not be available to the general public. Such misuse of judicial office tarnishes the public’s perception of the integrity, impartiality, and independence of the judiciary. The respect for, and adherence to, the law and the rules governing judicial conduct are the cornerstones for the public’s trust and confidence in the judicial branch of government.
Because we find that a public reprimand in this case is consistent with our precedent concerning sanctions for similar judicial misconduct, and we conclude that the findings of the JQC are supported by clear and convincing evidence, we approve the JQC’s recommendation of discipline. We accept the sanction of a public reprimand because our review of the entire record reveals that it is consistent with our precedent. The JQC’s Findings and Recommendations determined that “while the *979 judge’s conduct was misguided, it was not ill intentioned.” The JQC recommended a public reprimand because it found that it was in the “interests of justice, the public welfare and sound judicial administration.” Further, the JQC advised us that before making this recommendation, it engaged in an “extensive review of the documents associated with this inquiry, the relevant de-cisional law, and Judge Maxwell’s responses to the Panel’s inquiries.”
We, however, add several caveats to our acceptance of the stipulation so that the public and the judiciary are on notice of our deep concerns raised by Judge Maxwell’s conduct. If we were to reject the stipulation, this matter would be returned to the JQC for a full trial. In other words, because this is a stipulation, at this point in time we do not have the option to recommend a harsher sanction.[9] The prerogative given to us by the Constitution to modify the discipline is thus not an option for us at this time.[10]
As to whether a public reprimand is “serious” enough, we emphasize that the public reprimand will be administered before the entire Supreme Court in a solemn proceeding. Although we have considered alternatives, we conclude based on our precedent that acceptance of the stipulation in this case will in fact further justice and in some small way restore any public confidence that was diminished by Judge Maxwell’s actions. In the end, Judge Maxwell ultimately accepted responsibility for his actions and agreed that his actions cast a “negative light on the judiciary.”
The final caveat is one we issue to the JQC, the judiciary, and the public. Because of the potential for conduct like Judge Maxwell’s to seriously undermine public trust in the judicial office, we caution that in the event this type of conduct occurs in the future, we will consider harsher sanctions, including but not limited to removal from office.

III. CONCLUSION

Based on the foregoing, we approve of the stipulation and the JQC’s recommendation that Judge Maxwell receive a public reprimand. Accordingly, we hereby command Judge Maxwell to appear before this Court for administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
*980 QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, LEWIS, and BELL, JJ., concur.

. Canon 1 is titled, "A Judge Shall Uphold the Integrity and Independence of the Judiciary,” and provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Fla.Code of Jud. Conduct, Canon 1.

. Canon 2 is titled, "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge’s Activities.” Subsection A provides: “A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla.Code of Jud. Conduct, Canon 2A.

. Canon 3 is titled, "A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.” Subsection B(4) provides: "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge’s direction and control.” Fla.Code of Jud. Conduct, Canon 3B(4).

. Canon 3B(7) provides:
(7) A judge shall accord to every person who has a legal interest in a proceeding, or thal person’s lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
(a) Where circumstances require, ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits are authorized, provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.
(c) A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out the judge’s adjudicative responsibilities.
(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.
Fla.Code of Jud. Conduct, Canon 3B(7).

. The stipulation does not address Canons 3B(4) and 3B(7), which were included in the Notice of Formal Charges. Moreover, Canon 2B was not included in the Notice of Formal Charges. Canon 2B provides:
A judge shall not allow family, social, political or other relationships to influence the judge’s judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.
Fla.Code of Jud. Conduct, Canon 2B.

. At the JQC hearing, Judge Maxwell testified: "Since that time, I have taken some corrective action. I now carry with me, 24 hours a day, telephone numbers for assistant state attorneys so that I may reach an assistant state attorney and, if necessary, if this ever arises again, hold a full hearing and make a record.” Judge Maxwell also testified that he had contacted the chief judge and the criminal administrative judge in his circuit to "try to figure out something” so that there will be more on-call or duty judges available. As to the situation at the time, both the Chief Judge of the Eighteenth Judicial Circuit and the assistant state attorney serving as the Felony Intake Division Chief for Brevard County submitted affidavits to the JQC in support of Judge Maxwell averring that at the time of the defendant's arrest, there was no established formal policy for releasing a defendant from custody outside normal office hours, when the assigned duty judge is unavailable.

. Although Judge Maxwell minimizes his relationship with the attorney, it is undeniable that he practiced law with this attorney in the same firm prior to taking the bench.

. For example, Judge Maxwell was not aware that the victim had a very deep cut that ran six or seven inches, but rather was told by the attorney that "it was a scratch." He also was apparently not aware of the defendant’s criminal history, including a failure to appear, that likely would not have supported a release on her own recognizance. Although Judge Maxwell acknowledged at the hearing that he was aware the defendant was on felony probation at the time she was alleged to have committed the new criminal offense of domestic violence battery, he attempted to justify his actions by testifying that when he called the sheriffs office to secure the defendant’s release, he was unable to locate any law indicating that she could not be released on her own recognizance, and she met all of the statutory prerequisites for early release. Judge Maxwell also testified that the attorney advised him that he had spoken to his sister’s probation officer, who informed him that she would not be in violation of her probation as a result of her arrest. Judge Maxwell asserted that these are "technical defenses” that justify his conduct, stating, "I, to this day, believe that it would been [sic] inequitable to keep her around or unjust and not violative of the law to release her.” It was this attempt at the hearing to minimize the extent of his misconduct that caused the commission members to become concerned that Judge Maxwell was not in fact accepting full responsibility for his actions.

. The stipulation expressly provides that in the event it is rejected by this Court, the case is returned to the JQC for a final plenary hearing at which time "none of the statements in the [stipulation (or the attached Findings and Recommendations of Discipline) are admissible in that hearing for any purpose.”

. The Florida Constitution provides:
(1) The supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [judicial qualifications] commission and it may order that the justice or judge be subjected to appropriate discipline, or be removed from office with termination of compensation for willful or persistent failure to perform judicial duties or for other conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office, or be involuntarily retired for any permanent disability that seriously interferes with the performance of judicial duties. Malafides, scienter or moral turpitude on the part of a justice or judge shall not be required for removal from office of a justice or judge whose conduct demonstrates a present unfitness to hold office. After the filing of a formal proceeding and upon request of the investigative panel, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry.
Art. V, § 12(c)(1), Fla. Const.