PER CURIAM.
We have for review a stipulation between the Judicial Qualifications Commission (“JQC”) and Judge William Singbush, as well as the JQC’s findings and recommendation that Judge Singbush be publicly reprimanded, submit to the JQC a signed letter of apology to the public, his fellow judges, and the legal community, and submit written weekly logs to special counsel of the JQC documenting timeliness at court proceedings, for violating the Code of Judicial Conduct. We have jurisdiction. See art. V, § 12, Fla. Const. As explained in detail below, we accept the stipulation and approve the JQC’s findings and recommended sanction.
I. PROCEDURAL HISTORY AND FACTS
A. Proceedings Before the JQC
This action arose when, on May 9, 2011, the JQC served a Notice of Formal Charges on Judge William Singbush, Circuit Judge for Florida’s Fifth Judicial Cir *190 cuit, pursuant to rule 6(f) of the Florida Judicial Qualifications Commission Rules. The Notice of Formal Charges stated in pertinent part that the majority of members of the Investigative Panel of the JQC found probable cause existed to institute formal proceedings against Judge Sing-bush for violations of Canons l,[1] 2A,[2] 3B(4),[3] 3B(5);[4] 3B(7),[5] and 3B(8)[6] of the Code of Judicial Conduct. Specifically, the Notice of Formal Charges stated multiple allegations of tardiness or actions that caused scheduling inconveniences or inefficiencies. Among them were allegations that Judge Singbush (1) was habitually late for court; (2) offered to resume hearings that could not be concluded in the time allotted at inconvenient dates and times, such as Friday at 5:00 p.m. or Saturday morning; (3) took multiple, lengthy smoke breaks, which compromised the parties’ ability to have their cases heard promptly; (4) routinely failed to appear on time at first appearances for the Marion County Jail, generally arriving at 11:00 а.m. for first appearances scheduled to begin at 9:00 a.m.; (5) took long lunch breaks when scheduled for first appearance duties, which caused proceedings to finish as late as 8:00 p.m.; and (6) had previously responded to allegations of tardiness in responding to a 6(b) Notice of Investigation in JQC# 95-197, which was dismissed by the Investigative Panel.
The Notice of Formal Charges also alleged violations pertaining to Jumbolair, Inc. v. Garemore, No. 02-2312-CA-G (Fla.Marion Cty. Ct.2006), in which Judge Sing-bush presided. Specifically, the notice alleged that Judge Singbush, on his own initiative, and without notice to the parties, undertook to obtain a National Crime Information Center (NCIC) report that pertained to one of the witnesses. This action prompted counsel for Jumbolair to move for a mistrial. In responding to that mo *191 tion, Judge Singbush made a statement which introduced religion and religious beliefs into his decision-making process. His statement was as follows:
I don’t know of anybody that’s made a mistake — and except for perhaps one, and for that we murdered him. You know, he was faultless and we murdered him for it. That’s not politically correct but I happen to believe in God.... Christ is the intercessor.
Further, the notice alleged that when the impropriety of obtaining the NCIC report was raised, Judge Singbush gave the document to counsel for that witness, in violation of section 119.071(2)(b), Florida Statutes (2004), and 28 C.F.R. § 20.88. Additionally, after the trial concluded on April 1, 2005, Judge Singbush delayed filing his judgment until April 3, 2006.
Judge Singbush filed an answer to the Notice of Formal Charges on May 31, 2011. On September 2, 2011, Judge Sing-bush filed an amended answer to the Notice of Formal Charges. Ultimately, the JQC charges resulted in an April 18, 2012, stipulation between the JQC and Judge Singbush. In the stipulation filed in this Court, the Investigative Panel issued its Findings and Recommendation, and the panel waived oral argument before this Court. Further, Judge Singbush waived his right to any further hearing or proceedings if this Court accepts the stipulation and recommendations of discipline. He also agreed that this proceeding could be reopened if future complaints of tardiness or inappropriate religious statements were made against him to the JQC. We first examine the findings supporting the stipulation and the disciplinary recommendation.
B. The Stipulation
In the stipulation entered into and filed in this Court on April 18, 2012, Judge Singbush admitted that (1) “since his election in 1991, [he] has been habitually tardy for hearings, first appearances, and trials for which he was the presiding judge”; (2) “when tardy, [he] was often tardy for more than 15 minutes”; (3) “[his] tardiness inconveniences and economically burdens lawyers, litigants and the judicial system”; (4) “the majority of the times [he] was late to [c]ourt were without good cause”; and (5) he did make a statement introducing religion or his religious beliefs into the decision-making process. Judge Singbush further stipulated that since September 2011, he has provided written weekly logs demonstrating timeliness in his attendance at court proceedings to special counsel for the JQC. Judge Singbush also admitted his conduct violated Canons 1, 3B(4), and 3B(8) of the Code of Judicial Conduct. The Investigative Panel, however, found that the religious statement by Judge Singbush was an isolated incident. It also found that he did not act improperly in connection with the NCIC report.
Finally, the JQC and Judge Singbush agreed that a public reprimand is the appropriate discipline under the circumstances of this case. In addition, the JQC and Judge Singbush agreed that Judge Singbush would submit to the JQC a signed letter of apology to the public, his fellow judges, and the legal community, and written weekly logs documenting timeliness at court proceedings to special counsel for the JQC for one year after the stipulation is accepted by this Court. We turn now to the proper scope of review in this case.
II. ANALYSIS
A. Scope of Review
The Court may “accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the *192 [JQC].” Art. V, § 12(c)(1), Fla. Const.[7] Under rule 6(j) of the Florida Judicial Qualifications Commission Rules, the Investigative Panel may reach an agreement with a judge stipulating to the findings and recommendation as to discipline, and that stipulation shall be transmitted directly to the Supreme Court for review. See Fla. Jud. Qual. Comm’n R. 6(j).[8] When considering whether to approve a stipulation between the JQC and a judge, this Court will consider both the terms of the stipulation and the findings of the JQC. See In re Downey, 937 So.2d 643, 649 (Fla.2006) (citing In re Angel, 867 So.2d 379, 382-83 (Fla.2004)).
“This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved.” In re Pando, 903 So.2d 902, 903 (Fla.2005). “In cases where a judge admits to wrongdoing and the JQC’s findings are undisputed this Court will ordinarily conclude that the JQC’s findings are supported by clear and convincing evidence.” In re Diaz, 908 So.2d 334, 337 (Fla.2005). A judge’s admission of the misconduct and the impropriety of that conduct “bolsters] the JQC’s findings, which we give great weight as we consider its recommendation of discipline.” In re Angel, 867 So.2d at 383. Although we give the disciplinary recommendation of the JQC great weight, and we give full consideration to the provisions of the stipulation, “the ultimate power and responsibility in making a determination rests with this Court.” In re Kinsey, 842 So.2d 77, 85 (Fla.2003) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)); accord Angel, 867 So.2d at 382-83.
B. The Findings of the JQC
After a complete review of the record in this case, we conclude that there is clear and convincing evidence to support the JQC’s findings, and that the findings support the stipulation of the JQC and Judge Singbush. In its Findings and Recommendation, the JQC found that Judge Singbush’s conduct violated Canons 1, 3B(4), and 3B(8) of the Code of Judicial Conduct. Accordingly, we turn to an examination of the requirements of the Canons of Judicial Conduct at issue here.
Canon 1 of the Code of Judicial Conduct provides in pertinent part:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in es~ *193 tablishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Thus, a judge must strive to enforce high standards of conduct by always personally observing those standards so that the integrity of the judiciary may be preserved. As the commentary to Canon 1 explains:
Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.
Fla.Code of Jud. Conduct, Canon 1 cmt. We conclude that clear and convincing evidence supports the JQC’s finding that Judge Singbush’s conduct violated Canon 1. The evidence established that public confidence in the integrity of the judiciary was impaired by Judge Singbush’s unexcused, habitual tardiness and inappropriate statement regarding religion.
Canon 3B(4) of the Code of Judicial Conduct states:
A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge’s direction and control.
Fla.Code of Jud. Conduct, Canon 3B(4). The commentary to Canon 3B(4) further explains:
The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. -Judges can be efficient and business-like while being patient and deliberate.
Fla.Code of Jud. Conduct, Canon 3B(4) cmt. We conclude that clear and convincing evidence supports the JQC’s finding that Judge Singbush’s conduct violated Canon 3B(4). The evidence established that Judge Singbush was not courteous to litigants, jurors, witnesses, and lawyers due to his habitual tardiness, which inconvenienced and economically burdened lawyers and litigants.
The JQC also found that Judge Singbush violated Canon 3B(8) of the Code of Judicial Conduct, which provides, “A judge shall dispose of all judicial matters promptly, efficiently, and fairly.” Fla.Code of Jud. Conduct, Canon 3B(8). The finding of the JQC that Judge Sing-bush violated Canon 3B(8) is supported by clear and convincing evidence. He was habitually tardy, often for more than fifteen minutes and without good cause. His behavior inconvenienced and economically burdened lawyers and litigants alike.
The JQC found that these foregoing Canons were violated and we conclude that this finding is supported by clear and convincing evidence in the record. Further, Judge Singbush has agreed by stipulation that his conduct resulted in violations of Canons 1, 3B(4), and 3B(8) of the Code of Judicial Conduct. Based on this stipulation, we conclude that the findings of the JQC are supported by clear and convincing evidence. Thus, “the Court gives the findings persuasive force and great weight in considering the JQC’s recommendation of discipline.” In re Maloney, 916 So.2d 786, 787-88 (Fla.2005). We turn now to consideration of the recommendation that Judge Singbush receive a public reprimand, write a letter of public apology, and submit written weekly logs documenting timeliness at court proceedings to special counsel for *194 the JQC for one year after the stipulation is accepted by this Court.
C. Recommended Discipline
In the Findings and Recommendation, the JQC concluded that Judge Sing-bush was habitually tardy to court proceedings, the majority of those incidents were without good cause, and his statement referring to religion, although inappropriate, was an isolated incident. Judge Singbush recognized the impropriety of his behavior and accepted full responsibility for his actions. Thus, we agree with the JQC’s finding that “the interests of justice and sound judicial administration will be served” by a public reprimand of Judge Singbush; submission to the JQC of a signed letter of apology to the public, his fellow judges, and the legal community; and continued submission of weekly logs documenting timeliness at court proceedings to special counsel for the JQC for one year.
This discipline is in accord with our existing precedent in other cases involving habitual tardiness for trials and hearings, and inappropriate statements such as those injecting religion into the decision-making process. See, e.g., In re Woodard, 919 So.2d 389, 392 (Fla.2006) (approving a public reprimand and completion of anger management counseling for frequent tardiness and rudeness with counsel, witnesses, and parties appearing before the judge); In re Schapiro, 845 So.2d 170, 174 (Fla.2003) (approving public reprimand, psychological therapy, and public letters of apology for a judge who engaged in a pattern of rude and intemperate courtroom behavior); In re Golden, 645 So.2d 970, 972 (Fla.1994) (approving public reprimand for a judge who missed a trial for non-emergency reasons, was consistently late for trials and hearings, and used inappropriate language while presiding over cases); In re Trettis, 577 So.2d 1312, 1313 (Fla.1991) (approving public reprimand and continuation of prescribed or recommended treatment for stress where, among other improprieties, judge made inappropriate comments on pending proceeding).
For all these reasons, we find that a public reprimand, submission of a signed letter of public apology to the JQC, and submission of written weekly logs to special counsel of the JQC for one year after the publication of this opinion are the appropriate sanctions in this case.
III. CONCLUSION
Based on the foregoing, we approve of the stipulation and the JQC’s Findings and Recommendation recommending that Judge Singbush receive a public reprimand, submit written weekly logs to special counsel of the JQC for one year after the publication of this opinion, and submit a signed letter of public apology to the JQC. Accordingly, we hereby command Judge Singbush to appear before this Court for administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. Canon 1 provides: "An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.” Fla.Code of Jud. Conduct, Canon 1.

. Canon 2A provides: "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla.Code of Jud. Conduct, Canon 2A.

. Canon 3B(4) provides: "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.” Fla. Code of Jud. Conduct, Canon 3B(4).

. Canon 3B(5) provides: "A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so. This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in the proceeding.” Fla.Code of Jud. Conduct, Canon 3B(5).

.Canon 3B(7) provides in pertinent part: "A judge shall accord to every person who has a legal interest in a proceeding, or that person’s lawyer, the right to be heard according to law.” Fla.Code of Jud. Conduct, Canon 3B(7).

. Canon 3B(8) provides: "A judge shall dispose of all judicial matters promptly, efficiently, and fairly.” Fla.Code of Jud. Conduct, Canon 3B(8).

. The Florida Constitution provides:
(1) The supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [judicial qualifications] commission and it may order that the justice or judge be subjected to appropriate discipline, or be removed from office with termination of compensation for willful or persistent failure to perform judicial duties or for other conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office, or be involuntarily retired for any permanent disability that seriously interferes with the performance of judicial duties. Malafides, scienter or moral turpitude on the part of a justice or judge shall not be required for removal from office of a justice or judge whose conduct demonstrates a present unfitness to hold office. After the filing of a formal proceeding and upon request of the investigative panel, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry.
Art. V, § 12(c)(1), Fla. Const.

. Rule 6(j) provides:
(j) The Investigative Panel may reach agreement with a judge on discipline or disability, and such stipulation shall be transmitted directly to the Supreme Court to accept, reject or modify in whole or in part.