PER CURIAM.
We have for review a stipulation between the Judicial Qualifications Commission (“JQC”) and Judge Kathryn Maxine Nelson, as well as the JQC’s findings and recommendation that Judge Nelson be publicly reprimanded for violating the Code of Judicial Conduct. We have jurisdiction. See art. V, § 12, Fla. Const. For the reasons we explain below, we accept the stipulation and approve the JQC’s findings and recommended sanction.
I. PROCEDURAL HISTORY AND FACTS
A. Proceedings Before the JQC
This action arose when a Notice of Investigation, dated January 27, 2012, was served on St. Lucie County Court Judge Kathryn Nelson pursuant to rule 6(b) of the Florida Judicial Qualifications Commission Rules.[1] On March 8, 2012, a hearing was held before the JQC’s Investigative Panel in Orlando, Florida, at which Judge Nelson appeared and testified. On May 9, 2012, the Investigative Panel filed a Notice of Formal Charges against Judge Nelson pursuant to rule 6(f) of the Florida Judicial Qualifications Commission Rules and article V, section 12(b) of the Florida Constitution. The Notice of Formal Charges stated that the majority of the members of the Investigative Panel found probable cause existed to institute formal proceedings against Judge Nelson.
Specifically, the Notice of Formal Charges alleged that on the evening of October 25, 2011, in Vero Beach, Florida, Judge Nelson was observed driving a vehicle erratically, weaving back and forth between lanes, striking a guardrail several times, and ultimately crashing on a bridge. After initially identifying herself as a judge to the police officer at the scene, Judge *123 Nelson explained to the officer that she lost control of the vehicle because she was talking on her cellular phone. However, the officer smelled alcohol on Judge Nelson’s breath, and noticed that her eyes were glassy and bloodshot. Moreover, the officer observed that Judge Nelson’s clothes were in disarray. At first, Judge Nelson was unable to tell the officer where she was coming from or where she was going, but she later recalled that she may have been at a restaurant. Judge Nelson refused to exit the vehicle and refused to submit to field sobriety exercises. Judge Nelson was taken to the county jail where she refused to submit to a breathalyzer test. The Notice of Formal Charges stated that these acts, if they occurred as alleged, were in violation of Canons 1 and 2A of the Code of Judicial Conduct.
B. The Stipulation
On April 30, 2012, the Investigative Panel of the JQC and Judge Nelson entered into a stipulation pursuant to rule 6(j) of the Florida Judicial Qualifications Commission Rules.[2] The facts set forth in the stipulation are a reiteration of what was alleged in the Notice of Formal Charges, with two exceptions.[3] The stipulation also states that Judge Nelson did not cause any personal injury or damage to the property of others, and that Judge Nelson entered into a guilty plea to driving under the influence and was sentenced pursuant to the mandatory provisions under Florida law.[4]
The stipulation also expresses that Judge Nelson regrets and apologizes for her actions, and recognizes that her actions “have the effect of lessening the public’s confidence in the judiciary.” Judge Nelson “accepts full responsibility for her actions that put her in violation of Canons 1 and 2A of the Code of Judicial Conduct.” Judge Nelson has taken steps to prevent any recurrences of such conduct. Judge Nelson has sought counseling, which she agrees to continue. Judge Nelson has never been charged with any other driving under the influence offenses. The stipulation also reveals that Judge Nelson does not contest the Findings and Recommendation of Discipline.[5]
*124 C. The Findings and Recommendation of Discipline
On May 9, 2012, the Investigative Panel of the JQC filed its Findings and Recommendation of Discipline with this Court. The Investigative Panel finds that violating the law by driving while under the influence violates Canons 1 and 2A of the Code of Judicial Conduct. The JQC concludes that Judge Nelson’s conduct was an “isolated incident and does not demonstrate an unfitness for office.” The JQC recommends that “in the interests of justice, the public welfare and sound juridical administration will be well served by a public reprimand of Judge Nelson.”
II. ANALYSIS
A. Scope of Review
This Court may “accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [JQC]” and “order that the justice or judge be subjected to appropriate discipline.” Art. V, § 12(e)(1), Fla. Const.[6] Under rule 6(j) of the Florida Judicial Qualifications Commission Rules, the Investigative Panel may reach an agreement with a judge stipulating to the findings and recommendation as to discipline, and that stipulation shall be transmitted directly to the Supreme Court for review. See Fla. Jud. Qual. Comm’n R. 6(j). When considering whether to approve a stipulation between the JQC and a judge, this Court will “consider both the terms of the stipulation and the findings of the JQC.” In re Downey, 937 So.2d 643, 649 (Fla.2006).
“This Court reviews the findings of the JQC to determine if they are supported by clear and convincing evidence and reviews the recommendation of discipline to determine whether it should be approved.” In re Pando, 903 So.2d 902, 903 (Fla.2005). “In cases where a judge admits to wrongdoing and the JQC’s findings are undisputed this Court will ordinarily conclude that the JQC’s findings are supported by clear and convincing evidence.” In re Diaz, 908 So.2d 334, 337 (Fla.2005). A judge’s admission of the misconduct and the impropriety of that conduct “bolster[s] the JQC’s findings, which we give great weight as we consider its recommendation of discipline.” In re Angel, 867 So.2d 379, 383 (Fla.2004). Although we give the disciplinary recommendation of the JQC great weight, and we give full consideration to the provisions of the stipulation, “the ultimate power and responsibility in making a determination rests with this Court.” In re Kinsey, 842 So.2d 77, 85 (Fla.2003) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)).
B. The Findings of the JQC
After a complete review of the record in this case, we conclude that there is clear and convincing evidence to support the *125 JQC’s findings, and that the findings support the stipulation of the JQC and Judge Nelson. In its Findings and Recommendation of Discipline, the JQC found that Judge Nelson’s conduct violated Canons 1 and 2A of the Code of Judicial Conduct.
Canon 1 of the Code of Judicial Conduct provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Fla.Code of Jud. Conduct, Canon 1. As the commentary to this Canon explains, “[pjublic confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility.” Fla.Code of Jud. Conduct, Canon 1 cmt. Further, “violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.” Id.
Canon 2A of the Code of Judicial Conduct states:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Fla.Code of Jud. Conduct, Canon 2A. The commentary to Canon 2A further explains:
Irresponsible or improper conduct by judges erodes public confidence in the judiciary. A judge must avoid all impropriety and appearance of impropriety.... The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge.
Fla.Code of Jud. Conduct, Canon 2A cmt. In this case, the evidence established that on October 25, 2011, Judge Nelson crashed a vehicle she was driving after hitting a guardrail several times. The officer on the scene smelled alcohol on Judge Nelson’s breath, and the officer noticed that Judge Nelson had glassy and bloodshot eyes. Judge Nelson subsequently pled guilty to the charge of driving under the influence, a violation of Florida law. Judge Nelson has admitted that her conduct “ha[s] the effect of lessening the public’s confidence in the judiciary,” and she does not contest the JQC’s findings that her conduct violated Canons 1 and 2A of the Code of Judicial Conduct. It is clear that on the evening of October 25, 2011, Judge Nelson failed to “participate in establishing, maintaining, and enforcing high standards of conduct,” and personally observe those standards so that the integrity of the judiciary may be preserved. Fla. Code of Jud. Conduct, Canon 1. In addition, Judge Nelson failed to fulfill her duty to “respect and comply with the law and [to] act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” Fla. Code of Jud. Conduct, Canon 2A. Accordingly, we find that the stipulated facts support the JQC’s findings that Judge Nelson’s conduct violated Canons 1 and 2A of the Code of Judicial Conduct. Moreover, such findings are supported by clear and convincing evidence.
C. Recommended Discipline
Because we have concluded that the findings of the JQC are supported by clear and convincing evidence, we give the findings “persuasive force and great weight” in our consideration of the JQC’s recommended discipline. In re Maloney, 916 So.2d 786, 788 (Fla.2005). “[T]he object of disciplinary proceedings is not for the purpose of inflicting punishment, but rather to *126 gauge a judge’s fitness to serve as an impartial judicial officer.” In re McMillan, 797 So.2d 560, 571 (Fla.2001). Here, the JQC recommends that Judge Nelson be publicly reprimanded. In its Findings and Recommendation of Discipline, the JQC concluded that Judge Nelson’s conduct in driving while under the influence was an isolated incident and does not demonstrate an unfitness for office. Judge Nelson recognizes the inappropriateness of her behavior, accepts full responsibility, and apologizes for her actions. Judge Nelson has sought counseling and agrees to continue the counseling. We agree with the JQC’s recommendation that “in the interests of justice, the public welfare and sound juridical administration will be well served” by a public reprimand of Judge Nelson. Judge Nelson does not contest this recommendation of discipline.
We accept the JQC’s recommendation of a public reprimand for Judge Nelson. Existing precedent suggests that her conduct warrants public reprimand. See, e.g., In re Esquiroz, 654 So.2d 558 (Fla.1995) (approving public reprimand for a judge who pled nolo contendere to a driving under the influence charge, admitted violating canons 1 and 2A, and expressed remorse, and JQC found the incident isolated); In re Gloeckner, 626 So.2d 188 (Fla.1993) (approving a public reprimand for a judge charged with driving while under the influence of alcohol, admitted such conduct violated canons 1 and 2A, and apologized for the incident).
III. CONCLUSION
For the reasons expressed, we approve the findings and recommendation of the JQC. We agree with the JQC and hold that a public reprimand is the appropriate discipline in this case. Accordingly, we hereby command Judge Nelson to appear before this Court for administration of a public reprimand at a time to be established by the Clerk of this Court.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. The Notice of Investigation was not filed with this Court.

. On May 9, 2012, the stipulation was filed with this Court.

. The stipulation fails to state (1) that Judge Nelson initially identified herself as a judge to the officer, and (2) that she refused to exit the vehicle.

. Upon an individual’s first conviction for driving under the influence, the trial court must order the revocation of the defendant's driver’s license for a period of not less than 180 days or more than one year. See § 322.28(2)(a)1., Fla. Stat. (2011). In addition, the trial court must: fine the defendant not less than $500.00 or more than $1,000.00, see § 316.193(2)(a)1.a., Fla. Stat. (2011), place the defendant on probation for a period not to exceed one year, see § 316.193(6)(a), Fla. Stat. (2011), require the defendant to complete a substance abuse course, see § 316.193(5), Fla. Stat. (2011), order the defendant to participate in public service or community work project for a minimum of fifty hours, see § 316.193(6)(a), Fla. Stat. (2011), and order the impoundment or immobilization of the vehicle that was "operated by or in the actual control of the defendant or any one vehicle registered in the defendant’s name” for ten days, see id. The defendant also faces up to six months in jail. See § 316.193(2)(a)2.a., Fla. Stat. (2011). Penalties are increased if the defendant "causes or contributes to causing: [djamage to the property or person of another,” or "[sjerious bodily injury” or death of another. See § 316.193(3)(c)1.2.3„ Fla. Stat. (2011). The penalties are also enhanced if the defendant has a blood-alcohol level or breath-alcohol level of 0.15 or higher, or if the defendant is "accompanied in the vehicle by a person under the age of 18 years.” See § 316.193(4), Fla. Stat. (2011).

.Pursuant to the stipulation, Judge Nelson waived her right to a plenary hearing before the Hearing Panel of the JQC, and the parties waived oral argument before this Court.

. The Florida Constitution provides:
(1) The supreme court may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the [judicial qualifications] commission and it may order that the justice or judge be subjected to appropriate discipline, or be removed from office with termination of compensation for willful or persistent failure to perform judicial duties or for other conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office, or be involuntarily retired for any permanent disability that seriously interferes with the performance of judicial duties. Malafides, scienter or moral turpitude on the part of a justice or judge shall not be required for removal from office of a justice or judge whose conduct demonstrates a present unfitness to hold office. After the filing of a formal proceeding and upon request of the investigative panel, the supreme court may suspend the justice or judge from office, with or without compensation, pending final determination of the inquiry.
Art. V, § 12(c)(1), Fla. Const.