620 So.2d 1000 (1993)
In re Inquiry Concerning a Judge, Hugh S. GLICKSTEIN, No. 90-366.
No. 78288.
Supreme Court of Florida.
June 17, 1993.
*1001 Joseph J. Reiter, Chairman, and Ford L. Thompson, General Counsel, Tallahassee, and Ernest A. Sellers of Airth. Sellers, Lewis & Prevatt, Live Oak, Sp. Counsel to the Florida Judicial Qualifications Com'n, for petitioner.
Richard C. McFarlain, Charles A. Stampelos and Harold R. Mardenborough, Jr. of McFarlain, Wiley, Cassedy & Jones, Tallahassee, for respondent.
PER CURIAM.
We have for review the Judicial Qualifications Commission's (JQC) report recommending that Judge Hugh Glickstein be publicly reprimanded. We have jurisdiction pursuant to article V, section 12 of the Florida Constitution.
Judge Glickstein and the JQC stipulated that on October 25, 1990, Judge Glickstein wrote a letter endorsing the retention of Chief Justice Leander Shaw. The letter, which was written on the letterhead of the Fourth District Court of Appeal and which identified Judge Glickstein as a member of the judiciary, was published in the Sunday, November 4, 1990, edition of the Citrus County Chronicle and in the Monday, November 5, 1990, edition of the Florida Flambeau. The letter that appeared in the Flambeau is printed below:
I am voting "YES" to retain Chief Justice Leander Shaw for the following reasons:
1. We not only have an articulate, bright, black chief justice, but a Supreme Court that is sensitive to those of us left out or put down because of race, religion, or sex. If it ain't broke, don't fix it.
2. He has grown with the high office of justice, and makes valid, worthwhile contributions to the administration of justice.
3. As a child advocate, in his off-the-bench time, he has been a member of The Florida Bar's Committee for the Legal Needs of Children and its recently created Children's Commission. As such, he has assured the rest of us who work in child advocacy in our off-the-bench time that he will be a vocal, active supporter to fill children's needs. Very few Floridians are aware that he has served as the court's liaison to the state's guardian ad litem program, a program one child advocate has recognized as the most complete help a child can receive.
4. A jurist must be evaluated by his or her overall performance. Are their *1002 decisions informed and sensitive? I may disagree with him on an individual decision, but that is not the test. His decisions are informed and sensitive.
5. I am learning, at this late stage, to light candles instead of cursing the darkness; to build, not to blame; to feel confident, not to fear; to feel good, not to fuss. The attacks on Chief Justice Shaw, I perceive, are cursing the darkness in a society too preoccupied with blame, fear and guilt. As has been said, that dog won't hunt.
The JQC found that Judge Glickstein's act of writing the endorsement letter constituted a violation of canons 1, 2, and 7A(1)(b) of the Code of Judicial Conduct. We specifically address Judge Glickstein's letter as it relates to canon 7.
Canon 7A(1)(b) of the Code of Judicial Conduct provides:
A JUDGE SHOULD REFRAIN FROM POLITICAL ACTIVITY INAPPROPRIATE TO HIS JUDICIAL OFFICE.
A. Political Conduct in General.
(1) A judge or candidate for election to judicial office should not:
* * *
(b) make speeches for a political organization or candidate or publicly endorse a candidate for public office.
Judge Glickstein was disturbed by the opposition to the retention of a person in whom he had confidence and respect. To allay questions of whether Chief Justice Shaw should be retained, he published laudatory comments and confirmed his support of Shaw's retention. The record does not indicate that Judge Glickstein sought to accomplish anything more than helping inform the public of Justice Shaw's attributes.
Neither honest motives nor well-intentioned conduct, however, excuse less than strict compliance with the Code of Judicial Conduct. See In re The Florida Bar  Code of Judicial Conduct, 281 So.2d 21 (Fla. 1973). Canon 7A is absolute in its prohibition of public endorsements of political candidates, and we affirm the canon's rationale that a judge's involvement in political activity diminishes his or her ability to maintain independence on the bench. Judges hold a unique position in society, and with that position comes the unique power and responsibility of administering justice. A judge's neutrality in everything he or she does is necessary to sustain the public's confidence in individual judges and in the judicial system as a whole. This neutrality must extend to political activity, even when the political contest involves a judicial colleague in whom one has the utmost confidence and respect.
As a means of maintaining judicial integrity, a judge should not take any action which would deter the public's candid discussion of political issues, including the merits of a particular judge's election or retention in office. A judge's position, by its very nature, is one that can be a source of psychological intimidation of another person's decision of whether to support a judicial candidate. Because a judge's participation in the political process could ultimately influence the outcome, it is essential for all judges to fastidiously observe the prohibitions set forth in the canons. Inquiry Concerning Judge DeFoor, 494 So.2d 1121 (Fla. 1986). The canons balance the public's interest in judicial neutrality against any restrictions on the judge's freedoms. When so applied, the canons are necessary, reasonable, and constitutional.
Judge Glickstein exceeded the bounds of appropriate judicial conduct when he wrote the letter on his office stationery and announced in the letter that he was supporting Justice Shaw's retention. His letter was written for the purpose of having it published and acted upon. Although his public support was dignified and well-intentioned, his conduct cannot be condoned. Opinion 90-3, issued by the Committee on Standards of Conduct Governing Judges, clarified the scope of canon 7 as it related to the endorsements for judges up for merit retention. The opinion correctly advised that a judge could not engage in public activity on behalf of a member of the judiciary who is the target of a rejection campaign. Rule 7A is unambiguous and Judge Glickstein's claim that he was unaware of Opinion 90-3 does not *1003 excuse or justify his failure to comply with the rule.
For these reasons, we reprimand Judge Glickstein for his violation of canon 7A(1)(b). Publication of this opinion shall serve as the reprimand.
It is so ordered.
McDONALD, OVERTON and GRIMES, JJ., concur.
HARDING, J., concurs with an opinion.
BARKETT, C.J., dissents with an opinion.
KOGAN, J., dissents with an opinion.
SHAW, J., recused.
HARDING, Justice, concurring.
I concur with the majority's conclusion that Judge Glickstein exceeded the bounds of appropriate judicial conduct and that his transgressions were minimal. I wish this matter had been handled administratively. However, at this point in the proceedings, we are limited to the minimal sanction of an "appropriate reprimand." Art. V, § 12(f), Fla. Const. Thus, I concur with the majority.
BARKETT, Chief Justice, dissenting.
With the exception of the specific language of the first three lines of Judge Glickstein's letter, there is nothing unethical in what he wrote. Indeed, the Judicial Qualifications Commission conceded at oral argument that, but for the first three lines, formal charges would not have been filed. That being so, I do not believe that a public reprimand is warranted for such a technical violation when everyone involved concedes that the violation was uninformed and that Judge Glickstein's motives were honest and well-intentioned.
KOGAN, Justice, dissenting.
As stated in my dissent In re Code of Judicial Conduct (Canons 1, 2, and 7(A)(1)(b), 603 So.2d 494, 499-502 (Fla. 1992) (Kogan, J., dissenting), I believe that Judge Glickstein as a matter of his own conscience should have refrained from making the politically oriented comments at issue here. To my mind the dignity of the office of judge requires a certain aloofness from the rough-and-tumble of an electoral contest. But I do not believe that Judge Glickstein constitutionally can be penalized in any manner here, because there is no compelling state interest in prohibiting judges from making the specific kind of remarks Judge Glickstein made in the context in which he made them.
The right of free speech is at its zenith in the arena of political commentary, and the state therefore must identify a compelling state interest before it may restrict that speech. For the reasons stated in my prior dissent, id., I do not believe such an interest exists in this specific case. Therefore, the majority's application of the canons of ethics renders them unconstitutional as applied. I would construe the canons to render them constitutional by holding that a judge may not be disciplined for making comments of the type at issue here, at least within the context of a nonpartisan judicial merit retention election.
I would limit that holding to the facts of this case, because I can conceive of some political commentary by judges in which the state may have a compelling interest to restrict speech. For example, I think a compelling interest would exist to prohibit judges from advocating for or against a particular candidate for governor or attorney general, because these two elected officials are frequent litigants in the court system. Political involvement for or against such candidates could be construed as indicating bias when the elected governor or attorney general is before the judge in question, resulting in a continuing series of motions to disqualify the judge. Moreover, involvement in a purely partisan electoral contest could have the effect of identifying the judge with a particular agenda or party platform, possibly resulting in motions to disqualify the judge in a class of cases involving items from that agenda or platform.
However, the election here was nonpartisan. There also is no possibility of bias in Judge Glickstein's case, nor could his comments *1004 conceivably support even a colorable claim that he should be disqualified in any particular class of cases. As I noted before, id., the comments he made merely indicated that he supported then-Chief Justice Shaw in the 1990 merit retention election because of the latter's adherence to the law, concern for children, and commitment to racial, ethnic, and gender equality. Far from indicating any bias or partisan ideology, these statements merely reflected Judge Glickstein's belief that Justice Shaw was doing precisely what Florida law and the oath of office requires of every Justice of this Court  upholding the laws and enforcing them equally. I therefore cannot conceive that the state has a compelling interest in this context.