# Supreme Court of Florida

_____

No. SC13-1951

_____

**IN RE:  AMENDMENTS TO THE CODE OF JUDICIAL CONDUCT—
CANON 7.**

[June 11, 2015]

PER CURIAM.

The Court amends Canon 7 of the Florida Code of Judicial Conduct[1] to

clarify the scope of permissible joint campaign activities when judges seeking

merit retention to the same judicial office have drawn active opposition.[2]

Specifically, the amendments we adopt today expressly authorize judges facing

active opposition in a merit retention election for the same judicial office to

campaign together, including to pool campaign resources, in order to conduct a

joint campaign designed to refute the allegations made in opposition to their

_____

1. We have jurisdiction.  See art. V, § 2(a), Fla. Const.; see also In re Code of Jud. Conduct, 675 So. 2d 111 (Fla. 1996) (amending Canon 7 on the Court's own motion).

2. As used in this opinion, "active opposition" includes "any form of organized public opposition," as explained in the Commentary to Canon 7.  See Fla. Code of Jud. Conduct, Commentary to Canon 7.

continued judicial service, educate the public about merit retention, and express each judge's views as to why he or she should be retained in office. These amendments are intended to remedy, in a narrowly tailored fashion, the Court's concern that Canon 7 has been interpreted in an unduly restrictive manner to preclude judges on the ballot for merit retention for the same judicial office from conducting a joint campaign and pooling campaign resources when faced with active opposition.

As this Court has stated, Florida has "a compelling state interest in preserving the integrity of [its] judiciary and maintaining the public's confidence in an impartial judiciary." In re Kinsey, 842 So. 2d 77, 87 (Fla. 2003). Indeed, the United States Supreme Court recently recognized this very principle in Williams-Yulee v. Florida Bar, 135 S. Ct. 1656, 1662 (2015), which affirmed our decision to uphold Florida's rule prohibiting judges and judicial candidates from personally soliciting campaign contributions—a rule grounded in our concern with ensuring judicial impartiality and the public's trust in the integrity of the judicial system.

Cognizant of what the Supreme Court has called a "genuine and compelling" rationale to promote public confidence in judicial integrity, id. at 1667, we have concluded that the current interpretation of the restrictions on joint campaigning, as applied to judges on the ballot for merit retention, do not serve a compelling state interest and actually run contrary to the purposes underlying the Code to promote

public confidence in the integrity, impartiality, and fairness of the judiciary. Merit retention elections are unique in this respect, in that the sitting judge does not run against another candidate as occurs in judicial elections for trial court judges.

We emphasize that even without active opposition, judges are permitted to speak about merit retention, the legal system, and the administration of justice. Specifically, in connection to a judge's obligations under Canon 2 to "promote[] public confidence in the integrity and impartiality of the judiciary," Canon 7 actually authorizes judges to engage in political activity "on behalf of measures to improve the law, the legal system or the administration of justice." Fla. Code of Jud. Conduct, Canons 2A, 7D. This authorization includes the important ability to educate the public about the purposes of the merit selection and retention system for appointing and retaining appellate judges and Supreme Court Justices in Florida and why those judges and Justices appear on the ballot without a competing candidate.[3]

_____

3. This type of ongoing education both by members of The Florida Bar and the judiciary is especially critical. Polling conducted in the past has consistently indicated confusion on the part of the public about numerous aspects of the process for selecting and retaining appellate judges and Supreme Court Justices in Florida, including the purposes of the merit selection and retention system. See Scott G. Hawkins, Perspective on Judicial Merit Retention in Florida, 64 Fla. L. Rev. 1421, 1422 & n.4 (2012) (citing focus group research conducted on behalf of The Florida Bar and other studies).

Prohibiting judges in a merit retention election for the same judicial office from pooling campaign resources to educate the public about merit retention—as Canon 7 has been interpreted—is inconsistent with judges' responsibility to promote public confidence in the judiciary. It also prevents judges from collectively refuting allegations pertaining to their service in judicial office when those judges have been collectively attacked or opposed by groups seeking their removal for political reasons, thus providing an unjustified and unintended advantage to those groups and preventing the public from learning the relevant facts. Judges who face active opposition for merit retention to the same judicial office should be able to collectively respond to allegations against them, particularly when those judges are collectively attacked for political reasons rather than based on their integrity or competency to continue in office.

As Justice Ginsburg, joined by Justice Breyer, noted in her concurrence in Williams-Yulee, "issue-oriented organizations and political action committees have," in recent years, "spent millions of dollars opposing the reelection of judges whose decisions do not tow a party line or are alleged to be out of step with public opinion." 135 S. Ct. at 1674 (Ginsburg, J., concurring in part and concurring in the judgment). When judges are unduly restricted in their ability to refute these types of politically motivated attacks, the "[d]isproportionate spending to influence court

judgments threatens both the appearance and actuality of judicial independence." Id. at 1675.

Accordingly, we adopt amendments to Canon 7 to expressly authorize joint campaigning, including the pooling of campaign resources, for judges facing active opposition in a merit retention election for the same judicial office. Through these amendments, the Court provides clarity to the types of joint campaign activities that are permissible when judges in a merit retention election for the same judicial office have drawn active opposition, while at the same time preserving and promoting the strict ethical obligations that seek to ensure the fairness and impartiality of Florida's judges.

## I. THE CODE OF JUDICIAL CONDUCT

The Florida Code of Judicial Conduct establishes standards for ethical conduct and restrictions on the conduct of judges because, as recognized in the Preamble, the "role of the judiciary" as an "independent, fair and competent" branch of government "is central to American concepts of justice and the rule of law." Fla. Code of Jud. Conduct, Preamble. As the Preamble to the Code states, "[i]ntrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system." Id.

### A. HISTORY OF THE CODE

This Court adopted the Florida Code of Judicial Conduct in 1973, upon petition from The Florida Bar, to replace the Canons of Judicial Ethics that had governed judicial conduct in Florida since 1941. See In re The Fla. Bar—Code of Jud. Conduct, 281 So. 2d 21, 21-22 (Fla. 1973). Canon 7 of that newly adopted Code, entitled, "A Judge Should Refrain from Political Activity Inappropriate to his Judicial Office," provided that a "judge or judicial candidate for election to judicial office should not . . . publicly endorse a candidate for public office." Id. at 31. This Canon remained in effect for two decades and, along with the entire Code, sought to ensure that Florida's judiciary maintained its critical role in our democracy as the independent and non-political branch of state government.

In 1994, after the American Bar Association (ABA) adopted a new Model Code of Judicial Conduct, this Court unanimously replaced the 1973 Code with a Code that, according to this Court, was "substantially the same as" the ABA Model Code. See In re Code of Jud. Conduct, 643 So. 2d 1037, 1040 (Fla. 1994). The new Code, which as amended remains in effect to this day, "establishes standards for ethical conduct of judges." Fla. Code of Jud. Conduct, Preamble. The Code is comprised of "broad statements called Canons, specific rules set forth in Sections under each Canon," and a Commentary section for each Canon, which through explanation and example "provides guidance with respect to the purpose and meaning of the Canons and Sections." Id.

## B. OVERVIEW OF CANON 7

Within the Code, Canon 7 sets forth the requirements that govern the extent to which a judge or candidate for judicial office may engage in "political activity" and, consistent with the intent of the Code to foster an independent judiciary, prohibits "inappropriate political activity." Canon 7, which is now entitled, "A Judge or Candidate for Judicial Office Shall Refrain from Inappropriate Political Activity," provides in part that, except as authorized by certain other provisions of the Code, "a judge or a candidate for election or appointment to judicial office shall not . . . publicly endorse or publicly oppose another candidate for public office." Fla. Code of Jud. Conduct, Section 7A(1)(b). This Section of the Code is commonly referred to as the "endorsement ban" and is intended both to prevent judges from abusing the prestige of judicial office to advance the interests of others and to ensure that judges avoid "inappropriate" involvement in political activity.

The Commentary to Section 7A(1)(b) provides guiding principles regarding the purpose and meaning of the endorsement ban. Specifically, the Commentary explains that this ban "does not prohibit a judge or judicial candidate from privately expressing his or her views on judicial candidates or other candidates for public office," and also states that a candidate "does not publicly endorse another candidate for public office by having that candidate's name on the same ticket." Fla. Code of Jud. Conduct, Commentary to Canon 7.

Canon 7 does not, however, ban all public comments by other judges in support of a judge who is being unfairly attacked. The Commentary specifically provides that, "[w]here false information concerning a judicial candidate is made public, a judge or another judicial candidate having knowledge of the facts is not prohibited . . . from making the facts public." Fla. Code of Jud. Conduct, Commentary to Canon 7.

In addition, one of the specified exceptions to the endorsement ban in Section 7A(1)(b) is Section 7C(2), which authorizes a candidate who has drawn active opposition in a merit retention election to "campaign in any manner authorized by law, subject to the restrictions of subsection A(3)." Fla. Code of Jud. Conduct, Canon 7C(2). Section 7A(3) requires a candidate for judicial office to, among other things, "maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity, and independence of the judiciary," and prohibits a candidate from making pledges or promises of conduct in office or appearing to commit to issues that are likely to come before the court. Fla. Code of Jud. Conduct, Canon 7A(3).

This Court has not previously had the occasion to confront whether, as to a candidate for merit retention facing active opposition, Section 7C(2) would authorize the types of campaign activities that are prohibited by the endorsement ban in Section 7A(1)(b). However, past merit retention elections—including the

- 8 -

1984 merit retention election of Justices Shaw and Ehrlich, in which the Justices campaigned together after facing joint active opposition, and the more recent 2012 merit retention election where three of the current Justices on this Court faced joint active opposition aimed collectively at all three Justices—have raised questions about the scope of permissible joint campaign activities.

Central to these questions is whether the Code, and Canon 7 in particular, thwarts legitimate joint campaign activities in merit retention elections, where appellate judges and Supreme Court Justices do not face another opposing candidate as in elections for trial court judges, and where the active opposition is aimed not just at an individual judge or Justice but collectively at the continued service of the judges or Justices as a whole. Indeed, prior advisory interpretations of Canon 7, as explained in the next section, have led the Court to conclude that many appropriate and necessary activities under these circumstances may be seen as impermissible—and therefore that the endorsement ban is being interpreted in a more expansive manner than intended.

## C. INTERPRETATIONS OF CANON 7

In 1976, this Court created the Committee on Standards of Conduct Governing Judges, renamed as the Judicial Ethics Advisory Committee (JEAC) in 1997, and authorized the Committee to render "written advisory opinions to inquiring judges concerning the propriety of contemplated judicial and non-judicial

conduct." Pet. of Comm. on Standards of Conduct for Judges, 327 So. 2d 5, 5 (Fla. 1976). The opinions issued by the JEAC in response to requests from judges or judicial candidates, however, are "advisory in nature only" and not binding. Id. Ultimately, it is this Court's responsibility to interpret the Code and the individual Canons when that issue comes before the Court—typically when a judge is subject to discipline for violation of the Code. See, e.g., In re Glickstein, 620 So. 2d 1000 (Fla. 1993) (interpreting Canon 7 in the context of a judicial disciplinary proceeding).

In a series of advisory opinions, the JEAC has broadly interpreted Canon 7 and has concluded that Section 7A(1)(b), the endorsement ban, "absolutely forbids judges from endorsing any candidate for any office in any way." Fla. JEAC Op. 2008-11. For example, the JEAC has interpreted the endorsement ban to prohibit judges on the ballot from publicly endorsing each other, as well as from traveling together "so frequently that it creates the impression that the judicial candidates are working together or are endorsing each other." Fla. JEAC Op. 2011-20. Section 7A(1)(b) has also been broadly "construed to prohibit a judicial candidate from appearing to run as part of a 'slate.' " Fla. JEAC Op. 2010-14 (citing In re Kay, 508 So. 2d 329 (Fla. 1987)); see also Fla. JEAC Op. 2012-19.

Further, the JEAC has concluded that Section 7A(1)(b) prohibits a sitting judge from "engag[ing] in public activity on behalf of a member of the judiciary

- 10 -

when such member is the target of a rejection campaign undertaken by the head of another branch of government for reasons unrelated to competency or misconduct." Fla. JEAC Op. 90-3. The JEAC has also determined that judicial candidates running for different judicial seats who have the same campaign consultant may not mail campaign brochures in one envelope, even with a disclaimer that the candidates are not endorsing each other, because a joint mailing may give the impression that the candidates are working together and endorse each other. See Fla. JEAC Op. 2004-29.

While we recognize that the goal of the JEAC is to ensure that judges do not cross the line between permissible and impermissible activities, we have concluded that the JEAC has interpreted the endorsement ban in an overly expansive and therefore unduly restrictive way that does not serve the purposes for which the ban was created. The primary purposes were twofold: (1) to ensure that judges do not lend the prestige of their office to advance the private interests of others; and (2) to ensure that judges maintain their independence and impartiality. So, in the clearest examples, judges are prohibited from, and should not lend the prestige of their office by, endorsing a candidate for Governor, the Legislature, or other political office.

Although this Court has construed the ban on endorsing candidates to apply to merit retention campaigns for judicial office, see In re Glickstein, 620 So. 2d at

- 11 -

1002, this Court has not had occasion to interpret the scope of the ban as it relates to appellate judges or Supreme Court Justices who are on the ballot at the same time, seeking merit retention to the same judicial office and therefore not running against each other. As these advisory opinions have been issued by the JEAC in recent years, however, the Court has become increasingly concerned that, absent clarifying amendments to Canon 7, these JEAC opinions, as well as certain opinions from this Court, see, e.g., In re Kay, 508 So. 2d 329, have led to the conclusion that any type of joint campaigning, even for merit retention candidates to the same judicial office facing the same active opposition, is prohibited under the endorsement ban. The Court has also become concerned that this interpretation of the ban to prohibit joint campaigning by merit retention candidates for the same judicial office who are facing active opposition does not serve a compelling interest.

In considering this issue and the Court's concerns, a review of the major approaches followed by other jurisdictions is instructive.

## II.  APPROACHES TO THE ENDORSEMENT ISSUE

The ABA Model Code, upon which Florida's Code has been fashioned, is a natural place to start. Indeed, the ABA Model Code contains the identical prohibitory language regarding endorsements as Florida's Code, but includes in its commentary a "same judicial office" exception, which provides as follows:

> Paragraphs (A)(2) and (A)(3) prohibit judges and judicial candidates from making speeches on behalf of political organizations or publicly endorsing or opposing candidates for public office, respectively, to prevent them from abusing the prestige of judicial office to advance the interests of others. <u>See</u> Rule 1.3. <u>These Rules do not prohibit candidates from campaigning on their own behalf, or from endorsing or opposing candidates for the same judicial office for which they are running</u>.

ABA Model Code of Jud. Conduct, Canon 4.1, Comment 4 (emphasis added).

Accordingly, notwithstanding the prohibitory language of the endorsement ban, pursuant to the "same judicial office" exception of the ABA Model Code, a candidate for judicial office may endorse or oppose another candidate, but only if that candidate is seeking the same judicial office. Among states that utilize merit selection and retention, at least Arizona, Illinois, Maryland, and South Dakota have some form of the "same judicial office" exception. <u>See</u> Ariz. Code of Jud. Conduct, Rule 4.1, Comment 4; Ill. Code of Jud. Conduct, Canon 7(B)(1)(b)(iv); Md. Code of Jud. Conduct, Rule 4.4(c)(1) & Rule 4.4, Comment 4; S.D. Code of Jud. Conduct, Section 5(C)(1)(b)(iii). Several states with competitive elections between multiple candidates also utilize some form of the "same judicial office" exception, including Kansas and Oklahoma. <u>See</u> Kan. Code of Jud. Conduct, Rule 4.2(D)(3)(c); Okla. Code of Jud. Conduct, Rule 4.1, Comment 4.

At least two states go further than the ABA "same judicial office" approach and expressly permit judicial candidates to run for office as one "slate" in order to campaign more effectively. For example, Indiana's Code of Judicial Conduct—

which, like Florida's, prohibits a judge or judicial candidate from publicly endorsing or opposing a candidate for any public office—includes the following comment:

> Although judicial candidates in nonpartisan public elections are prohibited from running on a ticket or slate associated with a political organization, they <u>may group themselves into slates or other alliances to conduct their campaigns more effectively</u>. Candidates who have grouped themselves together are considered to be running for the same judicial office if they satisfy the conditions described in Comment [6] [if several judgeships on the same court are to be filled as a result of the election].

Ind. Code of Jud. Conduct, Rule 4.2, Comment 7 (emphasis added). New Mexico's Code of Judicial Conduct contains a similar provision, which in addition to permitting judicial candidates to campaign as a "slate" also permits candidates to participate in joint fundraising events with other judicial candidates. <u>See</u> N.M. Code of Jud. Conduct, Rule 21-402C(2) ("[J]udicial candidates may run for election as part of a slate of judicial candidates and may participate in joint fund-raising events with other judicial candidates.").

The "slate" exception broadens the possible types of campaign activity for which candidates may align, allowing them to group together if it enables the candidates, including especially those candidates facing opposition, to "conduct their campaigns more effectively." Ind. Code of Jud. Conduct, Rule 4.2, Comment 7. However, while the "slate" exception is more permissive than the "same

- 14 -

judicial office" alternative, it remains more restrictive than the third major approach—the California model.

California takes a unique approach to the endorsement issue. Under Canon 5 of California's Code of Judicial Ethics, both judges and judicial candidates are prohibited from publicly endorsing or publicly opposing only candidates for nonjudicial office. See Cal. Code of Jud. Ethics, Canon 5A(2). Indeed, the Commentary to California's Code makes clear that judges—including sitting judges not running in an election—are not prohibited from endorsing judicial candidates. Specifically, the Commentary explains as follows:

> Under this canon, a judge may publicly endorse a candidate for judicial office. Such endorsements are permitted because judicial officers have a special obligation to uphold the integrity, impartiality, and independence of the judiciary and are in a unique position to know the qualifications necessary to serve as a competent judicial officer.

Cal. Code of Jud. Ethics, Canon 5A, Advisory Comm. Commentary.

Accordingly, although judges and judicial candidates in California are prohibited by the state's Code of Judicial Ethics from endorsing or opposing candidates for nonjudicial offices, such as in state or federal legislative and executive races, they are explicitly permitted to endorse a candidate for judicial office due to their "special obligation to uphold the integrity, impartiality, and independence of the judiciary" and their "unique position to know the qualifications necessary to serve as a competent judicial officer." Id. In this way,

California has chosen to favor greater speech over more restrictive ethical regulations in balancing the competing interests in impermissibly "lending the prestige of the judicial office" with the special knowledge and obligation of judges to promote the welfare of the judicial branch. The California approach is thus the most permissive of the various alternatives for addressing the endorsement issue.

### III. AMENDING FLORIDA'S CODE

In light of the Court's ongoing concerns, and in consideration of these various approaches taken by other jurisdictions, the Court began to consider amendments to Florida's Code. To address the JEAC's overly broad interpretation of the endorsement ban in Canon 7, the Court published proposed amendments to the Code for public comment. The Court specifically sought comments from the JEAC and the Conference of District Court of Appeal Judges. In total, seven comments were filed, which ranged from enthusiastic support for the amendments from some members of The Florida Bar to opposition by the JEAC. The Conference indicated that its membership had diverse views, including some members who supported the proposed amendments as written; other members who believed that the amendments should apply only to members of the Supreme Court because members of the District Courts of Appeal do not experience the same concerns; still other members who expressed no position but believed that the

Code should be consistent for all judges; and members who opposed the amendments.

After fully considering the comments filed, the approaches taken by other jurisdictions, and especially the purposes underlying the Code and Canon 7, we have concluded that these amendments are necessary to clarify the proper interpretation of Canon 7 and the scope of permissible joint campaign activities by judges in a merit retention election for the same judicial office. We therefore adopt the amendments as proposed, which add a new sentence to Section 7C(2) of the Code and a new paragraph to the Commentary of Canon 7.[4]

Specifically, Section 7C(2), which authorizes certain campaign activities for judges who have drawn active opposition in a merit retention election, is amended to explicitly authorize judges facing active opposition in a merit retention election for the same judicial office to campaign together and conduct a joint campaign designed to educate the public on merit retention and each judge's views as to why he or she should be retained in office—and to refute the allegations leveled against them collectively by active opposition—to the extent not otherwise prohibited by Florida law. In addition, we amend the Commentary to Canon 7 to clarify that

---

4. In the publication notice, the Court inadvertently referenced "Section 7C(3)," instead of "Section 7C(2)," in the proposed amendment to the Commentary of Canon 7. We have corrected this inadvertent error, as reflected in the appendix to this opinion, but otherwise adopt the amendments exactly as proposed and published for comment.

joint campaigning by merit retention candidates for the same judicial office, as explicitly authorized under the amendment to Section 7C(2), "is not a prohibited public endorsement of another candidate" under the endorsement ban in Section 7A(1)(b).

These clarifying amendments are consistent with the types of campaign activities authorized and contemplated by the ABA Model Code, upon which Florida's Code is based, which contains the same prohibitory language regarding endorsements as Section 7A(1)(b) of Florida's Code but sets forth an explicit exception to the endorsement ban with respect to candidates for the same judicial office. See ABA Model Code of Jud. Conduct, Rule 4.1, Comment 4 (providing that, notwithstanding the prohibition on judges and judicial candidates "publicly endorsing or opposing candidates for public office," judicial candidates are not prohibited "from campaigning on their own behalf, or from endorsing or opposing candidates for the same judicial office for they which are running"). Indeed, while Florida's Code was modeled after the ABA Model Code, the JEAC's broad interpretation of the endorsement ban has taken Florida's Code in a more restrictive direction than the construction of the ban expressed in the Commentary to the ABA Model Code.

The amendments we adopt today bring Florida's Code back into closer alignment with the ABA Model Code. However, these amendments apply only to

judges seeking merit retention to the same judicial office who have drawn active opposition, rather than also to candidates in a competitive election for a seat on a trial court. Florida's Code, therefore, continues to remain stricter than either the ABA Model Code or the approach taken in many other states, including California and Indiana. See, e.g., Cal. Code of Jud. Ethics, Canon 5A(2), Advisory Committee Commentary (providing that judges and judicial candidates are prohibited from publicly endorsing or opposing only candidates for nonjudicial office); Ind. Code of Jud. Conduct, Rule 4.2, Comment 7 (providing that, although judges and judicial candidates may not publicly endorse or oppose a candidate for any public office, judicial candidates may group themselves into "slates" or "other alliances" in order "to conduct their campaigns more effectively").

Further, in authorizing each judge to express his or her own views "as to why he or she should be retained in office," these amendments still remain stricter than the ABA approach, which explicitly authorizes candidates to "endorse[]" or "oppose[]" other candidates "for the same judicial office." See ABA Model Code of Jud. Conduct, Canon 4.1, Comment 4. We do not decide at this time, and these amendments therefore do not address, whether judges seeking merit retention to the same judicial office may explicitly express support for each other.

Not only are these amendments more consistent with the interpretation set forth in the ABA Model Code, but they are also more consistent with the "broad

statement" that forms the basis for the rules that comprise Canon 7 itself—that is, "A Judge or Candidate for Judicial Office Shall Refrain From <u>Inappropriate Political Activity</u>." (Emphasis added.) In other words, it is the avoidance of inappropriate political activity, combined with the need to prevent judges from abusing the prestige of judicial office to advance the interests of others, that form the basis for the endorsement ban in Section 7A(1)(b). Neither of these justifications supports the JEAC's broad interpretation of the ban as prohibiting joint campaigning and the pooling of campaign resources under the limited circumstances outlined in these amendments.

The current, overly broad interpretation of the endorsement ban also creates tension with Canon 2 of the Code, which provides that a judge "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Fla. Code of Jud. Conduct, Canon 2A. In this regard, Section 7C(2), which we amend today, already states that a judge with active opposition in a merit retention election may campaign "in any manner authorized by law," subject only to the restrictions of subsection A(3) of the Code, which requires, among other things, that judges act in a manner "consistent with the impartiality, integrity, and independence of the judiciary." Fla. Code of Jud. Conduct, Canon 7A(3)(b). These amendments remove the unduly restrictive impediment under the current interpretation of Canon 7 on a judge's ability to conduct a joint campaign

- 20 -

with another judge seeking merit retention to the same judicial office, thereby enabling judges to more effectively educate the public about merit retention and to refute the allegations against them raised by the opposition.

Although we have considered the comments filed by the JEAC and the Conference, which have assisted in our review of this issue, we have ultimately concluded that none of the concerns raised in the comments provide a valid basis to reject these amendments. First, despite the JEAC's suggestion, the amendments do nothing to undermine the "separation between the judiciary and politics."

We wholeheartedly agree with Chief Justice Roberts, writing for the Supreme Court in Williams-Yulee, that "[j]udges are not politicians, even when they come to the bench by way of the ballot." 135 S. Ct. at 1662. Unfortunately, the reality of experience with those judges on the ballot for merit retention who face active opposition is that it is the opponents who are attempting to inject politics into the judiciary through their attacks. By explicitly permitting judges seeking merit retention for the same judicial office to run a joint campaign, judges who face active opposition are more likely to be able to effectively respond to outside attacks than when they are prohibited from pooling campaign resources, particularly when being attacked by those who have a political agenda.

In fact, these amendments actually further the interests of Canon 7 in separating judges from politics by enabling judges to collectively refute allegations

of active opposition that are based on politics, rather than a judge's competency or integrity. The amendments apply only to judges for merit retention, seeking the same judicial office, who have drawn active opposition. In other words, they are limited in scope and tailored to remedy a concern that arises in a specific context. Indeed, these amendments merely clarify that joint campaigning and the pooling of campaign resources, under certain circumstances, is a permissible campaign activity for this limited group of judges—who are already authorized by Section 7C(2) of the Code to engage in other limited campaign activities.

Moreover, as explained in In re Code of Judicial Conduct (Canons 1, 2, & 7(A)(1)(b)), 603 So. 2d 494, 498-99 (Fla. 1992), Canon 7 authorizes judges to engage in political activity "on behalf of measures to improve the law, the legal system or the administration of justice." Fla. Code of Jud. Conduct, Canon 7D. Permitting a judge who is running for merit retention to conduct a joint campaign with another judge for the same judicial office "designed to educate the public on merit retention and each candidate's views as to why he or she should be retained in office" is consistent with the Code's authorization of political activity to "improve the law, the legal system or the administration of justice."

These amendments also do not impact the other Canons that prohibit a judge from becoming improperly involved in politics except as authorized, nor do they permit a judge to accept an endorsement from a political party. See, e.g., Fla. Code

of Jud. Conduct, Canon 7D (providing that a judge shall not engage in any political activity except as authorized under the Code; by law; or on behalf of measures to improve the law, the legal system, or the administration of justice); Fla. Code of Jud. Conduct, Canon 7A(1) (providing that a judge or candidate for judicial office shall not act as a leader in a political organization, make speeches on behalf of a political organization, attend political party functions, or make a contribution to a political organization or candidate).  Nor do the amendments remove or alter the other ethical obligations and campaign restrictions already contained in the Code. See, e.g., Fla. Code of Jud. Conduct, Canon 7A(3) (requiring any candidate for a judicial office to be faithful to the law and maintain professional competence in it, and to maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity, and independence of the judiciary).

Finally, several members of the Conference of District Court of Appeal Judges expressed a concern with the proposed amendments related not to the merits of the proposal itself, but to its scope.  Specifically, some district court judges stated that they supported the proposed amendments but believed that they should apply only to Justices of the Supreme Court, rather than also to judges of the District Courts of Appeal.  Other members stated that they neither supported nor opposed the amendments but believed that the Code should be consistent for all judges, including trial court judges.

We have considered the views of the Conference but have ultimately concluded that these amendments strike the right balance as to their scope. The Code already contains different restrictions and provisions for judges seeking merit retention and candidates or incumbent judges seeking election to an office filled by public election between competing candidates. Compare Fla. Code of Jud. Conduct, Canon 7C(1), with Fla. Code of Jud. Conduct, Canon 7C(2)-(3). Indeed, different considerations may be relevant in a campaign between competing candidates, especially if neither is a sitting judge, and a campaign involving a "yes" or "no" vote to retain a sitting judge in office. There are not, however, any distinctions made in Canon 7 between Justices of the Supreme Court and other appellate court judges.

## IV. CONCLUSION

We thank the JEAC, the Conference, and all other parties who submitted comments regarding the amendments for their valuable input. Through the amendments we adopt today, we have endeavored to clarify provisions of Canon 7 regarding merit retention elections, while also furthering our unwavering goal to maintain public trust and confidence in the judiciary and to promote the essential need for a fair and impartial judiciary.

Accordingly, for all the reasons set forth in this opinion, we adopt the amendments as proposed and amend the Florida Code of Judicial Conduct as

reflected in the appendix to this opinion. New language is indicated by underscoring. The amendments shall become effective immediately upon the release of this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., concurs in result only.
POLSTON, J., concurs in result.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

Original Proceeding – The Code of Judicial Conduct

John Scarola, Laurie J. Briggs, Christian Dietrich Searcy and Forrest Gregory Barnhart of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, Florida; Cameron Michael Kennedy of Searcy Denney Scarola Barnhart & Shipley, P.A., Tallahassee, Florida; Judge Roberto Arias, Chair, Judicial Ethics Advisory Committee, Duval County Courthouse, Jacksonville, Florida; and Judge Melanie Given May, President of the Florida Conference of District Court of Appeal Judges, Fourth District Court of Appeal, West Palm Beach, Florida,

Responding with Comments

# APPENDIX

## Canon 7. A Judge or Candidate for Judicial Office Shall Refrain From Inappropriate Political Activity

### A. All judges and Candidates.

(1) Except as authorized in Sections 7B(2), 7C(2) and 7C(3), a judge or a candidate for election or appointment to judicial office shall not:

(a) act as a leader or hold an office in a political organization;

(b) publicly endorse or publicly oppose another candidate for public office;

(c) make speeches on behalf of a political organization;

(d) attend political party functions; or

(e) solicit funds for, pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions.

(2) - (3)    [No Change]

### B.    [No Change]

### C. Judges and Candidates Subject to Public Election.

(1) A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible persons to secure and manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law. A candidate shall not use or permit the use of campaign contributions for the private benefit of the candidate or members of the candidate's family.

(2) A candidate for merit retention in office may conduct only limited campaign activities until such time as the judge certifies that the judge's candidacy has drawn active opposition. Limited campaign activities shall only include the conduct authorized by subsection C(1), interviews with reporters and editors of the print, audio and visual media, and appearances and speaking engagements before public gatherings and organizations. Upon mailing a certificate in writing to the Secretary of State, Division of Elections, with a copy to the Judicial Qualifications Commission, that the judge's candidacy has drawn active opposition, and specifying the nature thereof, a judge may thereafter campaign in any manner authorized by law, subject to the restrictions of subsection A(3). This includes candidates facing active opposition in a merit retention election for the same judicial office campaigning together and conducting a joint campaign designed to educate the public on merit retention and each candidate's views as to why he or she should be retained in office, to the extent not otherwise prohibited by Florida law.

(3) A judicial candidate involved in an election or re-election, or a merit retention candidate who has certified that he or she has active opposition, may attend a political party function to speak in behalf of his or her candidacy or on a matter that relates to the law, the improvement of the legal system, or the administration of justice. The function must not be a fund raiser, and the invitation to speak must also include the other candidates, if any, for that office. The candidate should refrain from commenting on the candidate's affiliation with any political party or other candidate, and should avoid expressing a position on any political issue. A judicial candidate attending a political party function must avoid conduct that suggests or appears to suggest support of or opposition to a political party, a political issue, or another candidate. Conduct limited to that described above does not constitute participation in a partisan political party activity.

**D. – F.      [No Change]**

**COMMENTARY**

Canon 7A(1). A judge or candidate for judicial office retains the right to participate in the political process as a voter.

Where false information concerning a judicial candidate is made public, a judge or another judicial candidate having knowledge of the facts is not prohibited by Section 7A(1) from making the facts public.

Section 7A(1)(a) does not prohibit a candidate for elective judicial office from retaining during candidacy a public office such as county prosecutor, which is not "an office in a political organization."

Section 7A(1)(b) does not prohibit a judge or judicial candidate from privately expressing his or her views on judicial candidates or other candidates for public office.

A candidate does not publicly endorse another candidate for public office by having that candidate's name on the same ticket.

Section 7A(1)(b) prohibits judges and judicial candidates from publicly endorsing or opposing candidates for public office to prevent them from abusing the prestige of judicial office to advance the interests of others. Section 7C(2) authorizes candidates facing active opposition in a merit retention election for the same judicial office to campaign together and conduct a joint campaign designed to educate the public on merit retention and each candidate's views as to why he or she should be retained in office, to the extent not otherwise prohibited by Florida law. Joint campaigning by merit retention candidates, as authorized under Section 7C(2), is not a prohibited public endorsement of another candidate under Section 7A(1)(b).

Canon 7A(3)(b). Although a judicial candidate must encourage members of his or her family to adhere to the same standards of political conduct in support of the candidate that apply to the candidate, family members are free to participate in other political activity.

Canon 7A(3)(e). Section 7A(3)(e) prohibits a candidate for judicial office from making statements that commit the candidate regarding cases, controversies or issues likely to come before the court. As a corollary, a candidate should emphasize in any public statement the candidate's duty to uphold the law regardless of his or her personal views. Section 7A(3)(e) does not prohibit a candidate from making pledges or promises respecting improvements in court administration. Nor does this Section prohibit an incumbent judge from making private statements to other judges or court personnel in the performance of judicial duties. This Section applies to any statement made in the process of securing judicial office, such as statements to commissions charged with judicial selection and tenure and legislative bodies confirming appointment.

Canon 7B(2). Section 7B(2) provides a limited exception to the restrictions imposed by Sections 7A(1) and 7D. Under Section 7B(2), candidates seeking reappointment to the same judicial office or appointment to another judicial office or other governmental office may apply for the appointment and seek appropriate support.

Although under Section 7B(2) non-judge candidates seeking appointment to judicial office are permitted during candidacy to retain office in a political organization, attend political gatherings and pay ordinary dues and assessments, they remain subject to other provisions of this Code during candidacy. See Sections 7B(1), 7B(2)(a), 7E and Application Section.

Canon 7C. The term "limited campaign activities" is not intended to permit the use of common forms of campaign advertisement which include, but are not limited to, billboards, bumperstickers, media commercials, newspaper advertisements, signs, etc. Informational brochures about the merit retention system, the law, the legal system or the administration of justice, and neutral, factual biographical sketches of the candidates do not violate this provision.

Active opposition is difficult to define but is intended to include any form of organized public opposition or an unfavorable vote on a bar poll. Any political activity engaged in by members of a judge's family should be conducted in the name of the individual family member, entirely independent of the judge and without reference to the judge or to the judge's office.

Canon 7D. Neither Section 7D nor any other section of the Code prohibits a judge in the exercise of administrative functions from engaging in planning and other official activities with members of the executive and legislative branches of government. With respect to a judge's activity on behalf of measures to improve the law, the legal system and the administration of justice, see Commentary to Section 4B and Section 4C and its Commentary.